UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID EKSTEIN, SARA EKSTEIN
GAVRIEL ALEXANDER,

                            Plaintiffs,

        –against–


POLITO ASSOCIATES LLC,                                          **OPINION & ORDER**

                            Defendant.
------------------------------------------------------------X
POLITO ASSOCIATES LLC,                                          20 Civ. 1878 (JCM)

                            Counterclaim-Plaintiff,

        –against–


DAVID EKSTEIN, SARA EKSTEIN, GAVRIEL
ALEXANDER and 9 POLITO LLC,

                            Counterclaim-Defendants.
------------------------------------------------------------X

        Presently before the Court is plaintiffs and counterclaim-defendants David Ekstein, Sara

Ekstein and Gavriel Alexander's ("Guarantors") and counterclaim-defendant 9 Polito LLC's

("Borrower") motion to compel defendant and counterclaim-plaintiff Polito Associates LLC

("Polito Associates") to produce eight categories of documents set forth in the Guarantors'

Borrower's Third Request for Production of Documents, dated June 30, 2021. (Docket No. 40;

*see also* Docket Nos. 41-43).  Polito Associates opposed the Guarantors' and Borrower's motion,

(Docket No. 44), and the Guarantors and Borrower replied, (Docket No. 45).  For the following

reasons, the Guarantors' and Borrower's motion is granted.

## I.    BACKGROUND

This action concerns a $42,650,000.00 loan dated February 17, 2016 by Customers Bank ("Customers Bank") to the Borrower secured by a first priority mortgage on real property in Lyndhurst, New Jersey ("Property"). (Docket No. 1-1 ¶¶ 1, 8, 10).  In connection with the loan, the Borrower executed and delivered to Customers Bank a promissory note ("Note"), and the Guarantors executed and delivered to Customers Bank three guaranties. (*Id.* ¶¶ 9, 14).  On January 3, 2020, the loan matured and the Borrower was unable to satisfy the amounts outstanding under the loan. (*Id.* ¶ 30).  On January 7, 2020, Customers Bank issued a notice of default asserting, among other things, that the Guarantors owed $7,662,500.00 under the guaranties. (*Id.* ¶¶ 33-34).

On February 7, 2020, the Guarantors commenced the instant action by filing a complaint against Customers Bank in the Supreme Court, County of Rockland, seeking a declaratory judgment that these guaranties had been fully discharged and that the Guarantors had no present liability thereunder. (*See id.* ¶¶ 34-57).  On March 3, 2020, Customers Bank removed the action to this Court pursuant to 28 U.S.C. § 1332, (Docket No. 1), and filed an answer with counterclaims against the Borrower and Guarantors for breach of the Note and guaranties on March 6, 2020, (Docket No. 5).  Customers Bank amended its answer and counterclaims on April 17, 2020. (Docket No. 17).  On May 8, 2020, in response to such counterclaims, the Borrower and Guarantors asserted as an affirmative defense that any judgment "should be reduced by the fair market value of the collateral securing the loan underlying the [g]uaranties at issue . . . [,] [and] [t]he Guarantors are entitled to a fair market value credit in an amount equal to the fair market value of the collateral securing the loan." (Docket No. 18 at 14).  On September 24, 2020, Customers Bank sold, assigned, transferred and delivered its rights, title and interest in

the Note, mortgage and related loan documents to Polito Associates. (Docket No. 20 at 2).  Polito

Associates was substituted into the case as the defendant and counterclaim-plaintiff on October

19, 2020. (Docket No. 21).

Meanwhile, Customers Bank commenced a foreclosure action in the Superior Court of

New Jersey, Chancery Division, Bergen County, to enforce its mortgage and foreclose on the

equity of redemption held on the Property by the Borrower and Guarantors (the "Foreclosure

Action"). (Docket No. 41 ¶ 5).  Polito Associates, as successor-in-interest to Customers Bank,

obtained a judgment of foreclosure on January 7, 2021, authorizing and directing that the

Property be sold via a sheriff's sale to pay the debt owed to Polito Associates. (Docket Nos. 41 ¶

5; 41-1).  At the sheriff's sale, which took place on June 11, 2021, Polito Associates was the

successful bidder with a credit bid of $8,000,100.00. (Docket No. 41 ¶ 5).

On or about June 18, 2021, the Borrower and Guarantors filed a motion in the

Foreclosure Action objecting to the sale and seeking a credit against the mortgage debt equal to

the fair market value of the Property (the "Fair Market Value Credit Motion"). (*Id.* ¶ 6).  In

support of that motion, they submitted an appraisal valuing the Property between $37,000,000.00

and $44,000,000.00, depending on its particular usage. (*Id.*; *see also* Docket No. 41-2–41-5).

The appraisal set forth three valuations for three separate uses of the Property: (1) an "As-Is"

value, valuing the Property in its current, distressed condition, with numerous leasehold

vacancies; (2) a "Stabilized" value, valuing the Property as if it were leased under normal market

conditions outside of the foreclosure process; and (3) an "As Converted to Apartment" value,

valuing the Property as if it had been converted from its current commercial use to mixed

residential/retail use, under the same normal market conditions. (Docket Nos. 41 ¶ 6; 41-2–41-5).

According to the Guarantors and Borrower, the third valuation was "not borne of thin air," as the

managing member of Polito Associates, Jack Morris, "expressly" advised Gavriel Alexander

("Mr. Alexander") "that he intended to cause [Polito Associates] to convert the Property from

commercial use . . . to residential use and/or mixed commercial, retail, and/or residential use."

(Docket No. 41 ¶ 7).

      Polito Associates objected to the Fair Market Value Credit Motion and its supporting

appraisal, arguing that the valuations were "flawed" and that the "As Converted to Apartment"

valuation was "speculative." (Docket Nos. 41 ¶ 8; 43 at 12).  However, the court in the

Foreclosure Action declined to consider the motion on the grounds that this Court has "priority

jurisdiction over the issue because this action was commenced first in time," and because the

Borrower and Guarantors' affirmative defenses in this action raise the issue of the Property's fair

market value. (Docket No. 41 ¶ 8).

      As a result, on or about June 30, 2021, the Borrower and Guarantors sought discovery in

this action from Polito Associates related to Polito Associates' "anticipated conversion of the

Property." (*Id.* ¶ 9; *see also* Docket No. 42 ¶ 2).  Specifically, the Borrower and Guarantors seek

eight categories of documents[1] "relating specifically to the valuation of the Property . . . as

converted to residential use and/or mixed commercial, retail and/or residential use," including (a)

"[a]ll plans, designs, drawings, or renderings relating to" any such proposed conversion, and all

written and electronic correspondence relating thereto; (b) "[a]ll appraisals and/or valuations of

the Property under any proposed form or use, . . . and any written or electronic correspondence

relating thereto;" (b) "[a]ll agreements with architects, contractors, engineers, and consultants

relating to or concerning" any such proposed conversion, and all written and electronic

---

[1] Although the Borrower and Guarantors requested ten categories of documents relating to the valuation of the Property, (Docket No. 43 at 5), as Polito Associates explains, only eight of these requests are contested, (Docket No. 44 at 3 n.1).

correspondence with any architects, contractors, engineers, and consultants relating thereto; (c) "[a]ll estimates of costs and expenses associated with, relating to, or concerning" any such proposed conversion; (d) "[a]ll financial projections, budgets, forecasts, pro formas, or other financial documents relating to or concerning" any such proposed conversion; and (e) "[a]ll marketing plans with respect to the Property in its present form and use, and any written or electronic correspondence relating thereto." (Docket No. 42 ¶ 2; *see also* Docket Nos. 42-3; 44 at 3 & n.1). Polito Associates objected to these requests on relevance grounds, arguing that "[t]he value of the Property as of the date of the Sheriff's Sale is the only relevant date for the purposes of the Property's valuation in connection with this lawsuit." (Docket No. 42-2). Counsel engaged in good-faith efforts to resolve this dispute on October 18, 2021, to no avail. (Docket No. 42 ¶ 4). The Court heard oral argument on November 12, 2021, and set a briefing schedule for the present motion.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b) ("Rule 26(b)"), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To evaluate what information is discoverable, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (*Id.*).

When moving to compel discovery, the discovering party "has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action." *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974); *see*

*also Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139

(S.D.N.Y. 2017).  "Once relevance has been shown, it is up to the responding party to justify

curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132,

135 (S.D.N.Y. 2012) (quoting *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y.

2011)) (internal quotations omitted).  District courts have broad discretion to manage the scope

of discovery and decide motions to compel. *See Mason Tenders Dist. Council of Greater N.Y. v.

Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016); *see also Grand Cent. P'ship, Inc.

v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999).

Relevance is "'construed broadly to encompass any matter that bears on, or that

reasonably could lead to other matter that could bear on' any party's claim or defense." *Doe v.

Sarah Lawrence College*, 19 Civ. 10028 (PMH)(JCM), 2021 WL 197132, at *3 (S.D.N.Y. Jan.

20, 2021) (quoting *State Farm Mutual Automobile Insurance Company v. Fayda*, 14 Civ. 9792

(WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890

(S.D.N.Y. Mar. 24, 2016)).  To satisfy this standard, "the moving party must articulate a concrete

'linkage between the discovery sought and the [claims or] defenses asserted in the case.'"

*Edmondson v. RCI Hosp. Holdings, Inc.*, 16-CV-2242 (VEC), 2018 WL 4112816, at *1

(S.D.N.Y. Aug. 29, 2018) (quoting *Liberty Mut. Ins. Co. v. Kohler Co.*, No. CV 08-867 (SJF)

(AKT), 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010)).

## III.    DISCUSSION

The Guarantors and Borrower contend that the requested documents are relevant to their

affirmative defense as counterclaim-defendants that they are entitled to a credit against the fair

market value of any mortgage debt under New Jersey law.[2] (Docket No. 43 at 8).  Polito

---

[2] Because jurisdiction over this matter is based upon the parties' diversity of citizenship, the Court applies the choice of law rules of New York, the forum state. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *see also*

Associates objects to this discovery on the grounds that the requested documents relate to

"prospective proposed uses of the Property," and under New Jersey mortgage foreclosure law,

the only relevant value for such a fair market value credit is the value of the Property at the time

of the sheriff's sale. (*See* Docket No. 44 at 5).  Polito Associates further argues that production of

the documents would be unduly burdensome and prejudicial because, on top of being irrelevant,

the documents "contain business strategies . . . [and] confidential financial information." (*Id.* at

9).  In response, the Guarantors and Borrower maintain that (1) under well-recognized valuation

principles, the Property's "future income earning potential," as evidenced by its potential uses, is

highly relevant to its present value; (2) Polito Associates' confidentiality concerns can be

addressed via a confidentiality order; and (3) the Guarantors and Borrower will be highly

prejudiced if they are not permitted the requested discovery because they will be unable to

support their affirmative defense that seeks a fair market value credit against any judgment in

this action. (Docket No. 45 at 4-5).  The Court finds that these materials are highly relevant to

this case and rejects Polito Associates' reasons for curtailing their disclosure.

## A.    Relevance

Under New Jersey law, the foreclosed owner of mortgaged premises may be entitled to a

credit against any deficiency judgment for the difference between the fair market value of the

property foreclosed and the debt owed. *See Carteret Sav. & Loan Ass'n, F.A. v. Davis*, 105 N.J.

344, 351–52 (1987) (citing N.J. Stat. Ann. § 2A:50-3); *see also Fed. Title & Mortg. Guar. Co. v.*

---

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).  Under New York choice of law rules, New Jersey law governs
the substantive claims here because the property at issue is located in New Jersey, and the subject loan documents
contain a New Jersey choice of law provision. *See Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d
Cir. 1991); *U.S. Bank, Nat'l Ass'n for Registered Holders of WAMU Com. Mortg. Sec. Tr. 2007-SL2, Com. Mortg.
Pass-Through Certificates, Series 2007-SL2 v. R N R Mgmt., LLC*, 12-CV-1899 (SLT) (VMS), 2016 WL 11395003,
at *8 (E.D.N.Y. Jan. 5, 2016), *report and recommendation adopted sub nom. U.S. Bank, Nat'l Ass'n v. RNR Mgmt.,
LLC*, 2016 WL 3020868 (E.D.N.Y. May 24, 2016); (Docket No. 43 at 8 n.1).  This point is not in dispute.
(*Compare* Docket No. 43 at 8 n.1, *with* Docket No. 44 at 5).

*Lowenstein*, 113 N.J. Eq. 200, 209 (Ch. 1933).  The purpose of this equitable doctrine—on which

the Guarantors' and Borrower's affirmative defense is based—is "to prevent a potential double

recovery or windfall to the judgment creditor who . . . may profit on the purchase of the property

at the foreclosure sale (if purchased for less than fair market value), [and] who also seeks to

obtain satisfaction of his judgment." *See West Pleasant-CPGT, Inc. v. U.S. Home Corp.*

(hereinafter "*West Pleasant II*"), 243 N.J. 92, 108 (2020) (quoting *Morsemere Fed. Sav. & Loan

Ass'n v. Nicolaou*, 503 A.2d 392, 396 (N.J. Super. Ct. App. Div. 1986)) (internal quotations

omitted) (alterations in original).

The parties do not dispute that fair market value in mortgage foreclosure and deficiency

actions is determined as of the date of the sheriff's sale. *See, e.g.*, *J.F. v. S.F.*, Docket No. A-

3733-14T2, 2016 WL 6471312, at *2 (N.J. Super. Ct. App. Div. Nov. 2, 2016) (finding that fair

market value credit was properly "based upon the amount of [the debtor's] existing equity in the

property at the time of the sheriff's sale"); (Docket Nos. 43 at 13; 44 at 4; 45 at 3).  The New

Jersey Court of Chancery has defined "fair market value" as "that sum which the mortgagee

purchaser ought, under all the circumstances, [to] reasonably expect to realize from the acquired

premises either by way of sale in the near future or upon the basis of a permanent investment."

*See Fidelity Union Trust Co. v. Ritz Holding Co.*, 8 A.2d 235, 247 (N.J. Ch. 1939).  Other New

Jersey courts define fair market value in this context as "what a willing buyer would pay a

willing seller, neither acting under a compulsion" "at or about the same time of the inquiry." *See,

e.g.*, *Brunswick Bank & Tr. v. Heln Mgmt. LLC*, 181 A.3d 1030, 1038 (N.J. Super. Ct. App. Div.

2018) (citing *State v. Silver*, 92 N.J. 507, 513 (1983); *New Brunswick v. State Div. of Tax

Appeals*, 39 N.J. 537, 543 (1963)); *see also* Restatement (Third) of Property (Mortgages) § 8.4

cmt. c (1997).   The Court of Chancery has further explained that with respect to a property's

potential or prospective value, "a mortgagee purchaser ought not be compelled to speculate for the benefit of his debtor-mortgagor." *See Fidelity Union Trust*, 8 A.2d at 241. However, this does not mean that a property's potential value is irrelevant to its fair market value; to the contrary, "[t]he investor . . . is interested in real estate only because of the return which can be obtained from it[,] . . . [and] will pay more or less for it depending upon the likelihood of its income increasing or decreasing." *See id.* at 244. Thus, in determining fair market value, a court considers the property's capitalization based on income as well as its "potential value" based on the stability of rentals, neighborhood conditions and trends, and reconstruction value. *See id.* at 244–45.

Relying on decisions from New Jersey tax and eminent domain proceedings, the Guarantors and Borrower contend that "a determination of fair market value . . . requires the antecedent finding as to highest and best use of the property." (Docket No. 43 at 9) (citing *Ford Motor Co. v. Township of Edison*, 127 N.J. 290, 301 (1992); *State by Com'r of Transp. v. Hope Rd. Assocs.*, 630 A.2d 387, 391 (N.J. Super. App. Div. 1993), *certification granted, judgment modified*, 136 N.J. 27 (1994)). Highest and best use is "the use that at the time of the appraisal is the most profitable, likely use or alternatively, the available use and program of future utilization that produces the highest present land value provided that use has as a prerequisite a probability of achievement." *Hous. Auth. of City of New Brunswick v. Suydam Invs., L.L.C.*, 177 N.J. 2, 20 (2003) (quoting *Cty. of Monmouth v. Hilton*, 760 A.2d 786, 789 (N.J. Super. App. Div. 2000)) (internal quotations omitted); *see also Chevron U.S.A., Inc. v. City of Perth Amboy*, 10 N.J. Tax 114, 145 (1988) (defining highest and best use as "[t]he reasonably probable and legal use of . . . an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value") (quoting American Institute of Real Estate Appraisers, *The*

*Appraisal of Real Estate* 301 (9th ed. 1987)).  According to the Guarantors and Borrower, the highest and best use standard supports their need for the subject discovery because the discovery will shed light on the Property's "actually contemplated" uses, and thus, its fair market value at the time of the sheriff's sale. (Docket No. 43 at 9-11).

Polito Associates argues that the highest and best use standard is inapplicable to mortgage foreclosure and deficiency judgment proceedings, and even if it applied, the proposed discovery is still irrelevant because the "contemplated" uses cited do not conform to current zoning. (Docket No. 44 at 5-6; *see also* Docket No. 43 at 11).  Polito Associates relies on *Twp. of Manalapan v. Gentile*, 242 N.J. 295, 306 (2020), a recent New Jersey Supreme Court case which found that the trial court in a condemnation proceeding committed reversible error by permitting the jury to hear evidence valuing the subject property at its highest and best use, which would have required a zoning variance. *See* 242 N.J. at 310–11; (Docket No. 44 at 6).  The Supreme Court held that "in order to be relevant to the issue of a property's fair market value, evidence presupposing a variance must be more than merely speculative." *See Manalapan*, 242 N.J. at 307.  Therefore, a valuation assessing a property's highest and best use based on a zoning variance is only permissible "if there is a reasonable probability that a zoning change would be granted," and the trial court was required to make specific findings as to "the likelihood of obtaining the variance" before allowing the jury to hear evidence of the valuation.[3] *See id.* at 308, 310 (quoting *Borough of Saddle River v. 66 E. Allendale, LLC*, 216 N.J. 115, 119 (2013)).  According to Polito Associates, the requested discovery is irrelevant because there is no probability that any variance would be granted, and the "contemplated uses" are only

---

[3] This holding comports with the well-established rule that the "projected use" for highest and best use purposes "cannot be remote, speculative or conjectural." *Ford Motor Co.*, 127 N.J. at 301 (quoting *Inmar Assoc.s, Inc. v. Township of Edison*, 2 N.J. Tax 59, 65 (1980)) (internal quotations omitted); (*see also* Docket No. 44 at 7).

"hypothetical." (Docket No. 44 at 7).  Furthermore, any zoning change or use conversion would "take years to achieve," (Docket No. 44 at 7-8), as evidenced by a November 18, 2021 resolution by the New Jersey Sports and Exposition Authority to begin investigating the Property's "redevelopment potential," (Docket No. 44-1 at 2).

There is a dearth of caselaw opining on the applicability of the highest and best use standard to fair market value determinations in foreclosure or deficiency judgment actions under New Jersey law.  In such a situation—when the substantive law of a state is "uncertain or ambiguous"—"the job of the federal courts is carefully to predict how the highest court of the . . . state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).  To do so, federal courts must "give 'fullest weight' to the decisions of [the] state's highest court, and . . . 'proper regard' to the decisions of [the] state's lower courts." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 199 (2d Cir. 2003) (quoting *Travelers*, 14 F.3d at 119).  "Federal courts should also consider the decisions of federal courts construing state law, in particular the circuit court within whose jurisdiction the state at issue is located," *In re W. Pan, Inc.*, 372 B.R. 112, 121 (S.D.N.Y. 2007), as well as any relevant statutory language and legislative history, "the statutory scheme set in historical context," relevant cases from other jurisdictions, and "scholarly works and any other reliable data tending to indicate how [the highest state court] would resolve the issue." *Travelers*, 14 F.3d at 119 (quoting *In re E. & S. Districts Asbestos Litig.*, 772 F. Supp. 1380, 1391 (E.D.N.Y. 1991), *aff'd in part, rev'd in part sub nom. In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992)) (internal quotations omitted).

After an exhaustive review of New Jersey law and other relevant authority, the Court concludes that the Property's highest and best use is an appropriate consideration for determining

its fair market value, and therefore, the requested discovery is relevant.  Although this Court is

not aware of any New Jersey Supreme Court case that expressly endorses this view, the New

Jersey Supreme Court, and others, have reiterated that the "theory behind the public sale of

mortgaged premises," and the fair market value credit, "is to afford special protection to the

debtor-owner, first by insuring the return of any equity represented by the surplus of the sale

over the mortgage debt, and second by effectively establishing the fair market value of the

mortgaged premises to avoid oppressively high deficiency judgments." *See Carteret*, 105 N.J. at

351; *see, e.g.*, *Morsemere*, 503 A.2d at 395-96; *Lowenstein*, 113 N.J. Eq. at 208.  This doctrine

"is indicative of a broad legislative policy that mortgagors should not be personally liable for

more than the difference between [the fair market value of the mortgaged property] . . . and the

mortgage debt," and "a mortgagee is not entitled to recover more than the full amount of the

mortgage debt." *See 79-83 Thirteenth Ave., Ltd. v. De Marco*, 44 N.J. 525, 534–35 (1965).

According to the legislative history behind New Jersey's fair market value credit statute, the

statute was "a response to a serious public emergency" deflating the real estate market during the

Great Depression, and "ma[king] it impossible to secure anything beyond a nominal bid at a

judicial sale." *See West Pleasant II*, 243 N.J. at 105 (quoting *De Marco*, 44 N.J. at 534) (citing

N.J. Stat. Ann. § 2A:50-3; Leg., 159th Sess., ch. 88, 260 (N.J. 1935)) (internal quotations

omitted).  Thus, it stands to reason that to prevent a mortgagee from obtaining a double recovery,

and to protect the mortgagor's interests, a court evaluating a request for a fair market value credit

should consider the extent to which the subject property's highest and best use impacts its

"potential value" at the time of the sheriff's sale. *See Fidelity Union Trust*, 8 A.2d at 244–45.

Although the Court has not located any published New Jersey mortgage foreclosure or

deficiency judgment caselaw expressly employing this rationale, numerous other authorities

confirm that highest and best use is a common approach to property valuation in a variety of

contexts.   At least one New Jersey court has noted in *dicta* that "the probability of a higher

income-producing use in the reasonably near future is a factor enhancing present value" for

purposes of determining fair market value in connection with a deficiency judgment. *Summit*

*Bank v. Povoa*, No. A-5521-99T5, slip. op. at 4 (Sup. Ct. App. Div. Oct. 18, 2001).[4]  In support

of this proposition, the *Summit Bank* court relied on two leading eminent domain cases finding

that a fair market value appraisal may consider "the value of the property as it is likely to be

zoned in the future," *i.e.*, its highest and best use, as long as the appraisal "reflects the current

value of the property and not the value of the property at a future date." *See State by Com'r of*

*Transp. v. Caoili*, 135 N.J. 252, 271–72 (1994); *see also Hilton*, 760 A.2d at 790–91; *Summit*

*Bank*, slip. op. at 4.

That is not the only instance where New Jersey courts have analyzed fair market value

based on the highest and best use standard, or guidance from eminent domain or tax proceedings.

Other New Jersey authorities routinely reference eminent domain and tax caselaw to define fair

market value, both in deficiency proceedings and in other commercial transactions. *See, e.g.*,

*Sorokach v. Trusewich*, 113 A.2d 194, 196 (Super. Ct. App. Div. 1955); *First Sav. Bank of Little*

*Falls v. Nostrame*, No. A-78-98T2, slip. op. at 10 (Super. Ct. App. Div. June 15, 2000);[5] Myron

Weinstein, 30A N.J. Practice, Law of Mortgages § 39.9 n.9 (2d ed. 2021).  And litigants in New

Jersey tenancy and contractual disputes have employed the highest and best use standard to

determine the fair market value of real property to establish annual rent, or to affirmatively seek

---

[4] Although New Jersey local rules state that "[n]o unpublished opinion shall constitute precedent or be binding on any court," N.J. Prac. R. 1:36-3, that does not preclude federal courts from considering such opinions as persuasive authority when analyzing state law. *See, e.g.*, *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 165 n.4 (3d Cir. 2014) (summary order); *In re Rezulin Prod. Liab. Litig.*, 390 F. Supp. 2d 319, 342 n.119 (S.D.N.Y. 2005).

[5] *See supra* n.4.

a fair market value credit following foreclosure. *See W. Pleasant-CPGT, Inc. v. U.S. Home Corp.* (hereinafter "*West Pleasant I*"), No. A-1441-17T3, 2019 WL 1975906, at *8 (N.J. Super. Ct. App. Div. May 2, 2019), *rev'd on other grounds*,[6] 243 N.J. 92, 233 A.3d 463 (2020) (noting that trial court considered highest and best use in fair market valuation of foreclosed tracts of land); *Wendell v. 22 Grove Assocs. L.P.*, A-1395-14T2, 2016 WL 3434384, at *2 (N.J. Super. Ct. App. Div. June 23, 2016) (indicating that appraiser "determined market value" of leased property currently used as a "general office" based on "highest and best use" as an "[o]ffice [b]uilding or [b]ank [b]ranch") (internal quotations omitted).

Similarly, the Third Circuit has looked favorably on a highest and best use approach to valuing a debtor's property in the bankruptcy context, describing fair market value as "most respectful of the property's *anticipated use*," and the property's highest and best use as an assumption of the "income capitalization" method, a "well-accepted technique[] of real estate appraisal." *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 142, 145 (3d Cir. 2012) (emphasis added); *see also In re GGI Properties, LLC*, 568 B.R. 231, 251–52 (Bankr. D.N.J. 2017) (relying on tax assessment cases to elucidate "three basic approaches commonly used to value real estate," including the "sales comparison approach," which requires "identif[ying] the property's highest and best use," and noting that both parties' appraisers employed this approach to determine property's fair market value) (quoting *In re Mocco*, 222 B.R., 440, 457 (Bankr. D.N.J. 1998)); *In re Dunes Casino Hotel*, 69 B.R. 784, 788–89 (Bankr. D.N.J. 1986) (noting that

---

[6] In *West Pleasant II*, the New Jersey Supreme Court reversed the Appellate Division's decision in *West Pleasant I*, which awarded a fair market value credit as compensation for a property on which the creditor-respondent had foreclosed, and later purchased, at a sheriff's sale. *See West Pleasant II*, 234 N.J. at 96, 99, 112. The *West Pleasant II* court held that the debtor-petitioner could not "affirmative[ly] use . . . fair market value credit to obtain an after-the-fact money judgment against a creditor absent timely objection to the sheriff's sale, a creditor's claim for deficiency, or some other aspect of ongoing creditor collection activity . . . ." *Id.* at 96. Therefore, the *West Pleasant II* court did not address the propriety of the highest and best use standard as applied to the property's valuation that was discussed in *West Pleasant I. See West Pleasant I*, 2019 WL 1975906, at *8.

appraiser employed "highest and best use" approach in constructing one scenario presented to the court in determining debtor's equity in collateral). The Court finds this caselaw especially persuasive in light of the fact that like mortgage foreclosure and deficiency proceedings, bankruptcy involves a debtor and creditors with claims to collateral securing the debtor's unpaid loans, which may need to be valued for various purposes.

Therefore, the Court rejects the notion that the Property's highest and best use is irrelevant to this case simply because that standard is often employed in tax and eminent domain proceedings. As noted by the federal cases cited above, lead real estate appraisal resources confirm that highest and best use is relevant to fair market value in numerous settings because it "results in the highest *present value*." *Highest and Best Use*, The Dictionary of Real Estate Appraisal (5th ed. 2010) (emphasis added). These resources also echo the valuation standards set forth in New Jersey tax and eminent domain cases, providing that "[a] fair value measurement *assumes the highest and best use of the asset by market participants*," and must "consider use of the asset that is physically possible, legally permissible, and financially feasible at the measurement date." American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 61 (14th ed. 2013) (emphasis added); *see also Highest and Best Use*, Int'l Valuation Standards (8th ed. 2007). Consequently, although not often discussed in widely available New Jersey mortgage foreclosure cases, a property's highest and best use is an ordinary component of fair market value calculations across multiple sectors, and therefore, should be considered here. Other states do the same. *See, e.g.*, *Stone Mountain Prime LLC v. UICC Holding LLC*, 998 N.Y.S.2d 469, 470 (3d Dep't 2014); *First Pennsylvania Bank, N.A. v. Peace Valley Lakeside Cmty. & Agr. Tr., Inc.*, 478 A.2d 42, 44 (Pa. Super. Ct. 1984).

-15-

As a result, the requested discovery bears directly on the Property's fair market value at the time of the sheriff's sale, an issue raised by the Guarantors' and Borrower's affirmative defenses. *See Doe*, 2021 WL 197132, at *3.  Thus, it is highly relevant to this case. *See id.*; *see also Sec. & Exch. Comm'n v. Penn*, 14-CV-581 (VEC), 2018 WL 11319021, at *2 (S.D.N.Y. Apr. 18, 2018) (granting motion to compel discovery of documents that "appear[ed] to be highly relevant . . . to the valuation dispute between the parties").  Moreover, the Guarantors' and Borrower's request for these materials does not constitute an impermissible fishing expedition. *See Liberty Mut. Ins. Co.*, 2010 WL 1930270, at *2 (citing *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)).  Mr. Alexander affirmed under oath that he was told by Polito Associates' managing member that he intends for Polito Associates to convert the Property to the very uses the Guarantors and the Borrower seek to investigate in discovery. (Docket No. 41 ¶ 7). The Guarantors and Borrower should be permitted to explore the veracity of that statement as well as the likelihood of such use conversion at the time of the sheriff's sale for purposes of their fair market value calculation.[7]  The Court also agrees that the Guarantors and Borrower would be highly prejudiced without access to this information, as it is critical to maximizing any fair market value credit they may be entitled to receive. *See* Fed. R. Civ. P. 26(b)(1).

The Court rejects Polito Associates' reliance on *Manalapan* to support their argument that the converted uses on which the Guarantors and Borrower rely are too speculative to be relevant or constitute the Property's highest and best use. (Docket No. 44 at 6, 8).  *Manalapan* addressed the admissibility of evidence *at trial* regarding a condemned property's highest and

---

[7] To that end, the requested materials both pre-dating and post-dating the sheriff's sale are discoverable because they will shed light on what, if any, steps were taken to accomplish the subject use conversions before the sale, and what steps were left at the time it was finalized—in other words, whether or not the proposed uses were "speculative" at the time of the sale. *See Ford Motor Co.*, 127 N.J. at 301; (Docket Nos. 43 at 11-12; 44 at 8).

best use that would require zoning changes—not the propriety of seeking this information *through discovery*. *See* 242 N.J. at 306–10.  As a result, that case is inapposite at this juncture. Even assuming, *arguendo*, that *Manalapan*'s holding is substantive, and thus, will govern the evidentiary proceedings in this case under the *Erie* doctrine, *see* 304 U.S. at 78–79, it does not control now.  Evidence need not be admissible in order to be discoverable. *See* Fed. R. Civ. P. 26(b)(1).  Polito Associates therefore misconstrues the broad standard of relevance for discovery purposes, and asks the Court to determine the sufficiency of a potential expert opinion that has not even been propounded yet.  This the Court will not do.[8]

## B.    Confidentiality

With respect to Polito Associates' objection to this discovery on confidentiality grounds, (*see* Docket No. 44 at 9), the mere fact that the information sought is commercially sensitive does not create a privilege against disclosure. *See Federal Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979).  Furthermore, conclusory assertions that requested documents are "confidential" or "sensitive" are insufficient to establish good cause to curtail or limit their disclosure. *See Application of Akron Beacon J.*, No. 94 Civ. 1402 (CSH), 1995 WL 234710, at *10–11 (S.D.N.Y. Apr. 20, 1995); Fed. R. Civ. P. 26(c).  Polito Associates makes no attempt to offer "specific examples or articulated reasoning" supporting its assertion that the subject documents are confidential, and thus, will cause "substantial" prejudice if disclosed. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 143 (S.D.N.Y. 1997) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)) (internal quotations omitted); *see also New Falls Corp. v. Soni*, CV 16-6805 (ADS) (AKT), 2020 WL 2836787, at

---

[8] To the extent Polito Associates wishes the Court to exclude any expert testimony regarding the Property's potential, rezoned uses as too speculative, or for any other reason, however, it may do so in advance of trial. *See* Fed. R. Evid. 702, 703.

*11 (E.D.N.Y. May 29, 2020); (Docket No. 44 at 9).  Nor does it appear that the parties have met and conferred with respect to this confidentiality issue, as is required by Federal Rule of Civil Procedure 26(c)(1). (*Cf.* Docket No. 45 at 5).  Accordingly, the Court declines to preclude this discovery on these grounds.  The parties are directed to meet and confer to negotiate an acceptable confidentiality agreement governing the disclosure of the requested documents.

## IV.    CONCLUSION

For the foregoing reasons, the Guarantors' and Borrower's motion to compel is GRANTED.  Polito Associates is hereby ordered to produce the requested discovery by March 31, 2022.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 40).

Dated:   March 15, 2022
           White Plains, New York

**SO ORDERED:**


JUDITH C. McCARTHY
United States Magistrate Judge